UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| REBECCA HAMBY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:19-CV-115-HBG |
| | ) |
| VICTOR HUBBELL WILLIAMS, PLLC, | ) |
| CROSSVILLE DENTRISTRY, PLLC, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 16], for all further proceedings, including entry of judgment.

Now before the Court are Defendant Crossville Dentistry, PLLC's Motion for Summary Judgment [27] and Memorandum in Support [Doc. 28] and Defendant Victor Hubbell Williams, PLLC's Motion for Summary Judgment [Doc. 29] and Memorandum in Support [Doc. 30]. Plaintiff has filed a Response [Doc. 40] to both Defendants' motions for summary judgment and a Memorandum in Opposition [Docs. 41-1, 51].[1] Defendant Crossville Dentistry, PLLC filed a Reply to Plaintiff's Response. [Doc. 46]. The Motions are ripe for adjudication. Accordingly, for the reasons more fully explained below, the Court **GRANTS** Defendant's Motions **[Docs. 27, 29]**.

I. **BACKGROUND**

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 30, 2018, naming Crossville Dentistry, PLLC as her employer.

---

[1] All citations to Plaintiff's Response are to Docket number 51 unless otherwise specified.

[Doc. 1-3]. Plaintiff received a Notice of Right to Sue, dated March 5, 2019, from the EEOC. [Doc. 1-4]. Defendants were served a Notice of Non-Spoliation, dated May 8, 2018, which they received the same day. [Doc. 1-5]. Plaintiff filed this cause of action on April 5, 2019 [Doc. 1], alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and in violation of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, *et seq*. Specifically, Plaintiff alleges that Defendants engaged in a pattern of age discrimination against her and other older employees because the actual reason for her being terminated from her position as a dental hygienist was due to her age—as evidenced by Plaintiff being replaced by a younger employee immediately following her termination in spite of Plaintiff being qualified for her position and never having been disciplined, counseled, or reprimanded for violating any of Defendants' policies.

By way of background, both named Defendants—Crossville Dentistry, PLLC ("Crossville") and Victor Hubbell Williams, PLLC ("VHW")—are solely owned by Dr. Victor Hubbell Williams ("Dr. Williams"). [Doc. 27-8 at 9]. Dr. Williams owns multiple dental offices across East Tennessee. [*Id.*]. Defendants maintain that Crossville and VHW were, at all times, run as separate entities [*id.* at 34]; however, Plaintiff alleges that Crossville was simply another practice under VHW's umbrella of dental practices, meaning Defendants should be viewed as Plaintiff's single employer and/or her joint employer such that both Crossville and VHW would be covered employers under the ADEA.

In 1992, Plaintiff began working for Dr. Tad Parvin ("Dr. Parvin") as a dental hygienist, and she continued working in that position until Crossville purchased Dr. Parvin's practice in December of 2016. [Doc. 40-1, at 19–20]. Plaintiff was hired by Crossville in December of 2016

to work as a dental hygienist. [Doc. 27-8 at 81]. Plaintiff was terminated from her position with Crossville on April 6, 2018 when she was forty-seven (47) years old. [Doc. 1 at ¶¶ 42, 45].

Neither party disputes that Plaintiff possessed the clinical skills and abilities to perform her job; however, the parties do dispute the history of complaints and discipline regarding Plaintiff's interactions with coworkers during her employment. Defendants maintain that Plaintiff was the subject of various complaints from other employees regarding Plaintiff as a coworker and team member. [Doc. 27-8 at 77–100]. Defendants state that there was substantial friction between Plaintiff and one of her coworkers, Hilda Meadows, that affected the work environment for all Crossville employees. [*Id.* at 90–92]. Upon being informed of the employee complaints, Dr. Williams stated that he directed multiple supervisory employees to talk to Plaintiff to encourage her to get along with other employees and be a better team player. [*Id.* at 100]. Defendants state that Dr. Williams considered Plaintiff's inability or refusal to work in the new team environment at Crossville and her constant friction with coworkers—amounting to 5–10% of the decision-making process—when he decided to terminate Plaintiff. [*Id.* at 110–11].

However, Dr. Williams stated that the "overriding factor" for his decision to terminate Plaintiff stems from an investigation into the intentional destruction of approximately $50,000 of dental equipment, and Defendants claim that the investigation pointed to Plaintiff—or possibly one other coworker to a lesser extent—as being the most likely vandal. [*Id.*]. Dr. Williams stated that he checked schedules and determined that only two employees were working in the portion of the office where the equipment was damaged on the days of the vandalism—Plaintiff and Hilda Meadows, the two employees that allegedly caused friction in the office. [*Id.* at 104]. Dr. Williams also consulted with Crossville's primary dentist, Dr. Lamar Holland, and he claimed that Dr. Holland thought Plaintiff was the most likely culprit. [*Id.* at 108]. Following the investigation,

Dr. Williams stated he then believed that Plaintiff and Meadows would have to be terminated to halt the risk of further equipment damage. [*Id.* at 105]. Plaintiff was not informed that she was being terminated for vandalizing equipment, and Dr. Williams explained that he chose not to involve the police because there was no absolute proof that either Plaintiff or Hilda Meadows committed the vandalism. [*Id.* at 106–07, 115].

Plaintiff maintains that she was never disciplined or written-up during her employment. [Doc. 40-1 at 89–91]. Plaintiff also denies that various coworkers made complaints about her interactions with Hilda Meadows. Furthermore, Plaintiff states that she was not made aware that she was fired for alleged vandalism until Defendants responded to written discovery on February 28, 2020. [Doc. 40-1 at 181–82].

Plaintiff alleges that on April 6, 2018—the date of Plaintiff's termination—a new dental hygienist visited the Crossville office and informed her that she was a new hire. [Doc. 1 at ¶ 77]. On April 9, 2018, that new dental hygienist—Leisha Marcum, age 28—began working at Crossville. [Doc. 40-2 at ¶¶ 9, 11]. Plaintiff claims that she was replaced by a younger hygienist, Ms. Marcum, either on the actual day of her termination or on the very next business day, April 9, 2018. Dr. Williams stated that Ms. Marcum generally worked the same schedule that Plaintiff had worked prior to her termination. [Doc. 40-4 at 163]. Dr. Williams also stated his belief that Ms. Marcum was a temporary hire [*Id.* at 161]; however, Plaintiff argues that there was no express agreement or understanding that Ms. Marcum was a temporary hire. Crossville stated that there were, in fact, two hygienists hired to work Plaintiff's schedule the week following Plaintiff's termination—Ms. Marcum and Anita Oakley, age 57. [Doc. 27-4 at ¶ 4]. Plaintiff maintains that Ms. Oakley could not have been Plaintiff's replacement because she was already employed by Crossville prior to Plaintiff's termination and did not have a full-time schedule until May 15, 2018,

4

among other reasons. Additionally, another hygienist—Rachel East, age 25—started working for Crossville on June 1, 2018, but she was later terminated. [Doc. 27-4 at ¶ 4]. Crossville stated that Plaintiff's ultimate replacement—Ruth Rally, age 52—was hired in September of 2018. [Doc. 27-4 at ¶ 4]. Plaintiff maintains that, in any case, younger hygienists were hired as Plaintiff's replacements immediately after her termination and that the hiring of Ms. Rally was a mere litigation tactic.

## II. POSITIONS OF THE PARTIES

Defendants request summary judgment in this matter. [Docs. 27, 29]. Defendant Crossville asserts multiple reasons for why Plaintiff's claims must fail. First, Crossville argues that Plaintiff cannot show that her termination was discriminatory because Plaintiff does not have direct evidence of discrimination. [Doc. 28 at 12]. Crossville argues that the lack of direct evidence means that Plaintiff must show that Crossville's reason for terminating her was a pretext for discrimination, but Plaintiff cannot establish that Crossville's basis for terminating her was a pretext because Plaintiff cannot show that her termination would not have occurred "but for" her age. Crossville states that pretext cannot be established because of Dr. Williams's reasonable and "honest belief" that Plaintiff's termination was necessary to prevent additional vandalism or destruction of medical equipment. Furthermore, Crossville argues that Plaintiff has no evidence to show that her age was the "but for" factor in her termination because of Crossville's reasonable and "honest belief" that she had vandalized the equipment.

Crossville also argues that it is not an "employer" covered by the ADEA because it did not have twenty employees for each working day in each or more calendar weeks in 2017 or 2018. Therefore, Crossville asserts that it is not subject to suit under the ADEA, and that Plaintiff cannot offer any proof to establish that Crossville meets the definition of employer under the ADEA.

5

Crossville's third argument is that Plaintiff cannot establish the prima facie elements of an age discrimination claim under either the ADEA or the THRA. Crossville argues that this is because Plaintiff cannot show one of the required elements—that Plaintiff was replaced by a younger employee. Finally, Crossville asserts that Plaintiff cannot show that her compensation adjustment was discriminatory and that the claim was not timely raised in the EEOC charge. Crossville maintains that Plaintiff has no evidence to show her age was the "but for" factor in the compensation adjustment. Additionally, Crossville argues that Plaintiff's allegations of discriminatory pay adjustment were not timely filed because the charge was filed more than 300 days after the occurrence of the alleged discriminatory conduct.

Defendant VHW asserts that the defenses of Crossville as to Plaintiff's ADEA and THRA claims would also apply to VHW were the Court to decide that VHW is a proper party defendant. However, VHW argues that it is not a proper party defendant because it was not Plaintiff's employer, Plaintiff did not file an EEOC charge against VHW, Plaintiff did not properly exhaust her alleged ADEA claim against VHW, and any alleged ADEA claim against VHW is now time barred. [Doc. 30 at 1].

Plaintiff responded in opposition [Docs. 40, 51] to Defendants' motions for summary judgment, arguing first that—viewing the evidence in the light most favorable to Plaintiff—Defendants terminated Plaintiff because of her age. Specifically, Plaintiff argues that there is no contemporaneous evidence that reasonably supports Defendants' alleged "honest belief" that Plaintiff needed to be terminated to prevent further vandalism nor that Plaintiff actually ever vandalized equipment. [Doc. 51]. Additionally, Plaintiff asserts that Crossville is a covered employer under the ADEA because it had the requisite number of employees due to the numerous employees that performed work for and/ or on behalf of Crossville but were also employed and

compensated by VHW.  Plaintiff argues that, given the closely interrelated and intermingled nature of Defendants, the Court should find that Crossville and VHW were Plaintiff's employers under either the single employer and/or joint employer doctrine and were covered entities under the ADEA.  Finally, Plaintiff asserts that she properly exhausted her administrative remedies with respect to VHW based on her Charge of Discrimination filed with the EEOC and because there was an established relationship and identity of interest between Defendants.

Defendant Crossville filed a reply brief [Doc. 46], reasserting that Crossville is not a covered employer under the ADEA, but even if it was, Plaintiff cannot offer any evidence to establish a prima facie case of discrimination.  Alternatively, Crossville argues that if the Court finds that a prima facie case has been established, no reasonable jury could dispute that Crossville had a legitimate business reason for terminating Plaintiff due to vandalism of dental equipment and subsequent investigation into the incident.  In sum, Crossville argues through its reply brief that there are no material facts in dispute, that Plaintiff cannot offer any evidence that her age was the "but for" cause of her termination or that Crossville's legitimate business reason for doing so was pretext, and that Plaintiff cannot meet her burden to evidence that Crossville is a covered employer under the ADEA.

### III. STANDARD OF REVIEW

Defendants have moved for summary judgement pursuant to Federal Rule of Civil Procedure 56.  Summary judgment under Rule 56 is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of establishing that no genuine issues of material fact exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).  All facts and all inferences to be drawn therefrom must

7

be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the finder of fact. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**IV.    ANALYSIS**

The Court has considered the parties' arguments and the evidence in this case, and for the reasons stated below, the Court finds Defendants' Motions [**Docs. 27, 29**] well taken, and the same are **GRANTED**.

As mentioned above, Plaintiff asserts age-discrimination claims under both the ADEA and THRA. As a threshold matter, the same analysis applies for Plaintiff's state-law and federal claims. *See Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006) ("We apply the same analysis to age-discrimination claims brought under the THRA as those brought under the ADEA."); *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n. 1 (6th Cir. 2008) ("The analysis of claims brought pursuant to the THRA is identical to the analysis used for Title VII claims."). The Court now turns to the Parties' arguments for and against summary judgment.

A.  **Evidence of Age Discrimination and Establishing of a Prima Facie Claim**

The ADEA prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). "The burden of persuasion is on the plaintiff to show that 'age was the "but-for" cause of the employer's adverse action.'" *Blizzard v. Marion Tech. College*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).

A plaintiff "may establish a violation of the ADEA by either direct or circumstantial evidence." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004) (internal citations omitted). Circumstantial evidence "is proof that does not on its face establish discriminatory animus but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Geiger*, 579 F.3d at 620 (internal quotations and citations omitted). Age-discrimination claims based on circumstantial

9

evidence are evaluated pursuant to the burden-shifting framework set forth in *McDonnell Douglas Corp., v. Green*, 411 U.S. 792 (1973). "In age discrimination cases, the protected class includes all workers at least 40 years old." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003); *see also Lewis v. City of Detroit*, 702 F. App'x 274, 280 (6th Cir. 2017) (citing *Grosjean* for the same).

Plaintiff does not present direct evidence to establish her age-discrimination claims so the Court now turns to Plaintiff's proffered circumstantial evidence of age discrimination under the *McDonnell-Douglas* framework. Under the *McDonnell-Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory explanation for its actions. *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 463 (6th Cir. 2003) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)). If the employer articulates an appropriate explanation, the burden shifts back to the plaintiff to demonstrate the employer's explanation is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802–04, 807.

Throughout this burden shifting, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253); *see also DiCarlo v. Potter*, 358 F.3d 408, 414–15 (6th Cir. 2004). The plaintiff cannot rely solely on "mere personal belief, conjecture and speculation" because they are insufficient to support an inference of discrimination. *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997) (internal alteration omitted). A defendant bears only the burden of production

10

and not the burden of persuasion. *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 515 (6th Cir. 2003).

### 1. Plaintiff's *prima facie* case for age discrimination

To establish a prima facie case of age discrimination, "a plaintiff bears the burden of demonstrating that (1) she was a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) either a person outside the protected class replaced her or she received different treatment than a similarly situated non-protected employee." *Oliver v. St. Luke's Dialysis LLC*, 491 F. App'x 586, 587 (6th Cir. 2012); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012). The plaintiff's burden "is light, one 'easily met' and 'not onerous.'" *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020) (quoting *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011)). In addition, "this evaluation must be conducted independently of [the employer's] proffered nondiscriminatory reason and must not conflate the prima facie and pretext states of the *McDonnell Douglas* test." *Provenzano*, 663 F.3d at 813. Here, the parties dispute only the fourth element.

The fourth element of a prima facie case of age discrimination may be satisfied by evidence that "the employer replaced the plaintiff with a [non-protected] employee" or "when the employer 'treated similarly situated, non-protected employees more favorably.'" *Willard*, 952 F.3d at 808 (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521–22 (6th Cir. 2008)). In its brief, Crossville states that "[i]n the week following Hamby's termination, two hygienists were hired, Leisha Marcum, age 28, and Anita Oakley, age 57." [Doc. 28 at 17]. Crossville maintains that Ms. Marcum was hired on a short-term basis and worked about six weeks before she resigned. Crossville asserts that "Hamby's ultimate replacement, Ruth Ann Rally, age 52, was hired in September of 2018." *Id.*

In response, Plaintiff argues that Ms. Marcum "was a newly hired employee that began working full-time the following business day . . . after Hamby was fired . . . ." [Doc. 51 at 25–26]. Furthermore, Ms. Marcum's time records show that she worked approximately the same schedule that Plaintiff had for over a month after Plaintiff's termination. *See* [Doc. 40-9 at 1–7, 15–22]. Additionally, Plaintiff argues that Crossville's labeling of Ms. Marcum as a temporary or short-term employee is irrelevant because the evidence shows that she, in fact, replaced Plaintiff. Furthermore, Plaintiff asserts that Ms. Oakley could not have been Plaintiff's replacement because Ms. Oakley had already been employed at Crossville prior to Plaintiff's termination, she did not work Plaintiff's schedule, and she did not begin working as a full-time employee until May 15, 2018

The Court finds that Plaintiff has made a sufficient showing in regard to the fourth element. According to the legal standard for "replacement," a "person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *See Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) (citing *Sahadi v. Reynolds Chem.*, 636 F.2d 1116, 1117 (6th Cir. 1980)); *see also Grosjean v. First Energy Corp.*, 349 F.3d 332, 335–36 (6th Cir. 2003).

The Court finds that Ms. Marcum fits this description of replacement, as the evidence shows that she was hired as a dental hygienist—officially starting the business day after Plaintiff's termination—and worked roughly the same schedule that Plaintiff had up until Ms. Marcum resigned in pursuit of another opportunity. *See* [Doc. 40-8 at No. 4]. Furthermore, the Court is not convinced by Crossville's argument that Ms. Marcum was intended to be a temporary or short-

12

term hire. *See Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 318 (6th Cir. 2007) ("[T]he fourth element of the *prima facie* case in an age discrimination case can be met even where the new hire, who is a member of the non-protected class, has the title of 'temporary' employee. In cases where the new hire takes on the plaintiff's former job responsibilities, merely designating the new hire 'temporary' will not defeat the fourth element."); *Perry v. OneSource Facility Services, Inc.*, No. 1:06 CV 02167, 2008 WL 11378886, at *6 (N.D. Ohio July 18, 2008) (Acknowledging the Sixth Circuit's rejection of the temporary replacement argument and finding that the designation of "temporary" is not decisive.). Plaintiff also argues that the fourth element may be established by circumstances supporting an inference of discrimination; however, the Court need not address this additional argument as it has already determined that the evidence tends to show that Plaintiff was replaced by a younger employee. The Parties do not dispute the first three elements, and the Court finds no cause to question whether Plaintiff has met them considering the record of evidence. Therefore, the Court finds that Plaintiff has established a prima facie case of age discrimination under the ADEA and THRA.

### 2. Crossville's proffered reason for terminating Plaintiff

Once a Plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. Here, Crossville claims it terminated Plaintiff primarily to prevent additional vandalism or destruction of medical equipment and partially because of Plaintiff's inability to effectively work in a team environment. The Court finds that Defendants have articulated a legitimate, non-discriminatory explanation for the decision to terminate Plaintiff. *See, e.g.*, *Rosenthal v. Faygo Beverages, Inc.*, 701 F. App'x 472, 477–78 (6th Cir. 2017) (Defendant employer articulated a legitimate, non-discriminatory explanation for terminating sales employee when the employee had written "a rude and unprofessional email to a

13

third-party vendor" and other emails to defendant's customers containing remarks that were "disrespectful or disparaging of others.").

### 3. Whether Crossville's proffered reason was pretext to age discrimination

Once the employer shows a legitimate, non-discriminatory reason for its actions, then "the plaintiff must prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Johnson v. Univ. of Cincinatti*, 215 F.3d 561, 573 (6th Cir. 2000). "[A] reason cannot be proved to be a pretext *for discrimination* unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. V. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original). "The Sixth Circuit has explained that in proving pretext the plaintiff must set forth more than a dispute over the facts upon which her discharged were based." *Hodges v. City of Milford*, 918 F. Supp. 2d 721, 739 (S.D. Ohio 2013) (citing *Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir. 2001)). "[T]he plaintiff must put forth evidence which demonstrates that the employer did not honestly believe in the proffered non-discriminatory reason for its adverse employment action." *Id.* (citing *Braithwaite*, 258 F.3d at 494). As the Sixth Circuit has explained:

> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.

*Hodges*, 918 F. Supp. 2d at 740 (quoting *Smith v. Chrysler*, 155 F.3d 799, 807 (6th Cir. 1998)).

Additionally, there are three interrelated way[s] in which the plaintiff may prove pretext: (1) by showing that the proffered reasons had no basis in fact, (2) by showing that the proffered reasons did not actually motivate the employer's action, or (3) by showing that the proffered reasons were insufficient to motivate the employer's action." *Id.* (citing *Tingle v. Arbors at*

14

*Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012)) (other citations omitted). But an employer is entitled to judgment in its favor when it demonstrates that it "reasonably and honestly relies on particularized facts in making an employment decision . . . even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Babb v. Maryville Anesthesiologists*, 942 F.3d 308, 322 (6th Cir. 2019) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009)).

The Court finds that Crossville's "honest belief" was reasonably informed and considered prior to Plaintiff's termination. Plaintiff argues that the investigation leading to the decision to terminate her was unsupported and never actually occurred. This argument is without merit. The record shows that Dr. Williams checked schedules to determine which employees had been working and had access to the equipment at the time of the vandalism, and Plaintiff and two others were subsequently identified.[2] Dr. Williams also spoke to the primary dentist at Crossville, Dr. Holland, who believed that Plaintiff was the most likely culprit. When considering the three employees who had access to the medical equipment, Dr. Williams determined that Plaintiff and Ms. Meadows, to a lesser extent, were the most likely vandals. At that time, Dr. Williams could not definitively rule out Ms. Meadows so he made the legitimate business decision to fire both employees to prevent future vandalism of equipment. The Court acknowledges that the investigation could have been more extensive; however, that does not invalidate the honest belief that led to Plaintiff's termination, as it was still reasonable under the circumstances and with respect to Dr. Williams's investigation into the matter.

---

[2] Dr. Williams stated that one of the three identified individuals—the front desk worker—was quickly ruled out. Even though she had been in the building at the time of the apparent vandalism, Dr. Williams believed it would be highly unlikely for her to have been back in the part of the office where the damaged equipment was found because front office workers rarely went to that part of the Crossville office.

15

Plaintiff cites to *Richardson v. Astec, Inc.*, where the plaintiff was terminated after the employer received an employee grievance about her, but the employer refused to give any details of the complaint to the plaintiff and did not allow her to tell her side of the story prior to termination. 366 F. Supp. 3d 983, 989 (E.D. Tenn. 2019). There, the Court decided that the employer was not entitled to the honest belief rule because of the employer's refusal to provide any details of the complaint to the plaintiff and not giving her an opportunity to share her side of the story. *Id. Richardson* is distinguishable because the employer in that case had deviated from its own policies when it refused to share which other employee had complained about the plaintiff and prevented the plaintiff from offering her own explanation. In *Richardson*, the Court considered both the violations of the employer's own policies alongside the plaintiff's strong performance reviews in invalidating the honest belief rule defense. Here, Plaintiff has alleged that she was otherwise clinically skilled and competent—a fact that Crossville does not dispute—however, that is only half of what was considered in *Richardson* so it will not defeat the honest belief rule. Plaintiff has pointed to no general policies of Crossville demanding that she be informed of the investigation being conducted against her or provided with an opportunity to be heard on the issue by her employer.

Plaintiff also argues that Crossville made intentional misrepresentations to the EEOC because, as Plaintiff alleges, "Dr. Williams claimed that he instructed [Regional Office Manager] Duncan to basically withhold in the EEOC Position Statement the "real" reason Hamby was terminated for damaging equipment . . . ." [Doc. 51 at 30]. Plaintiff argues that this independently suffices to show pretext. Plaintiff cites to a Fifth Circuit case where "[D]efendants supplied the EEOC with a misleading explanation regarding [plaintiff's] termination and . . . this constitutes evidence of pretext." *Burton v. Freescale Semiconduction, Inc.*, 798 F.3d 222, 237–38 (5th Cir.

16

2015). Defendant also cites to an Eighth Circuit case where it was held that evidence of an employer's EEOC position statement that was inconsistent with other evidence in the case is relevant because the inconsistency "tends to prove that the reasons it offered at trial were pretextual." *Maschka v. Genuine Parts Co.*, 122 F.3d 566, 570 (8th Cir. 1997). The Sixth Circuit has not yet ruled on this specific issue; however, Defendant cites to a district court decision out of the Sixth Circuit that "adopt[ed] the reasoning of the Fifth and Eighth Circuit and [found] that the [contradictory] affidavits and other statements to the EEOC may raise an inference of pretext. *Guyton v. Exact Software N. Am.*, 2016 WL 3927349, at *14 (S.D. Ohio July 21, 2016).

In this case, however, the Court does not find that the response to the EEOC charge constitutes an intentional misrepresentation because Plaintiff admits in her brief that the EEOC position statement does reference the damaged equipment. [Doc. 51 at 15 n. 15]. Furthermore, in *Guyton* the Southern District of Ohio also considered contradictory affidavits and other statements in finding an inference of pretext. *See* 2016 WL 3927349, at *14. This matter is notably distinct from that because Dr. Williams stated in his deposition that he did not want to fire Plaintiff, because he needed competent and dependable employees—which Plaintiff was—; however, the risk of further damage to dental equipment outweighed that need. Accordingly, Dr. Williams considered Plaintiff's interactions with Ms. Meadows and other coworkers to a minor extent, but he based his decision to terminate Plaintiff mostly on the risk of additional vandalism. The other evidence in the record, including Dr. Williams's investigation and consultation with Dr. Holland demonstrate that this was a reasonably-informed business decision. The Court notes that it clearly would have been preferred for Defendant to cite the "real" cause for Plaintiff's termination more expressly than it was in the response to the EEOC charge. However, the Court finds that this is

insufficient to subvert the honest belief rule and demonstrate that Defendants' actions were a pretext to age discrimination, given the other evidence in the record supporting that honest belief.

The Court finds that Crossville's honest belief that terminating Plaintiff was necessary to prevent additional equipment damage was reasonable. Plaintiff cannot show that the proffered reason had no basis in fact, that the risk of further vandalism did not actually motivate the termination decision,[3] nor that it was insufficient to warrant the termination considering the heavy financial cost already incurred because of the vandalism as well as the risk of additional costs if more vandalism were to occur. Therefore, Plaintiff has not shown that the proffered reason for termination was a pretext for age discrimination. As VHW argued, even were this Court to decide that VHW was also Plaintiff's employer, it would be privy to the same defenses raised by Crossville, chiefly that Plaintiff has failed to show that Defendants' actions were prompted by the alleged honest belief and instead served as pretext to age discrimination. Plaintiff has not argued that VHW would not be able to employ the same defenses as Crossville aside from arguing against the defenses generally. The Court finds that Defendants are entitled to summary judgment because Plaintiff has not shown that Defendants' actions were pretext to age discrimination. Therefore, it is unnecessary for the Court to address Defendants' additional arguments.

---

[3] The Court notes for completeness that Plaintiff also argues her pay was reduced by about $8,000 per year in March of 2017. Plaintiff says this was an attempt to force her into quitting so that a younger hygienist could be hired and serves as additional evidence of age discrimination. This argument is unavailing and is based on conjecture. Plaintiff states in her complaint that there was an understanding that her compensation would not change after Dr. Williams purchased the Crossville practice and she was kept on. [Doc. 1 at ¶ 41]. It is evident that Plaintiff's compensation was reduced to fall in line with the understanding between Plaintiff and her new employer. *See* [Doc. 27-7 at 52–53 (Plaintiff acknowledging her understanding that her compensation would be consistent with her new employer as it was previously)]. Plaintiff was on track to make somewhere in the range of $90,000 to $100,000 her first year with the new practice, a stark contrast to the $70,000 to $75,000 she had been making per year previously. Dr. Williams explained in his deposition, and it is clear to the Court, that the reduction in pay was motivated by an attempt to conform to the Parties' agreement, not age discrimination. [Doc. 27-8 at 68].

18

## V. CONCLUSION

Accordingly, for the reasons described above, the Court hereby **GRANTS** Defendants' Motions for Summary Judgment [**Docs. 27, 29**].

**IT IS SO ORDERED.**

ENTER:

/s/ Bruce Guyton

H. Bruce Guyton
United States Magistrate Judge